REPUBLIC NATIONAL BANK OF DALLAS, Trustee, et al., Appellants,

v.

Ida L. FREDERICKS et al., Appellees.

No. 14863.

Court of Civil Appeals of Texas.

Dallas.

Dec. 10, 1954.

Rehearing Denied Jan. 7, 1955.

Julius H. Runge, John C. Harris and John N. Touchstone, Dallas, for appellants.

Burford, Ryburn, Hincks & Ford, Bruce Graham, Benton Musslewhite, J. Cooper Blankenship and Edwin A. Nesbitt, Dallas, for appellees.

YOUNG, Justice.

This suit was instituted by Republic National Bank of Dallas, trustee, seeking a construction of the wills of A. C. Ebie and son Nelson Russell Ebie, both deceased; making parties thereto Dorothy Ebie Wright, daughter of A. C. Ebie and beneficiary under his will (together with husband joined pro forma), Ida L. Fredericks, a widow, divorced wife of Nelson Russell Ebie, deceased, and independent executrix of his estate, and Hope Cottage Association, a charitable corporation, also a beneficiary named in the will of A. C. Ebie. The trustee had been resorting to the corpus of this trust estate, which it was managing under the terms of the A. C. Ebie will, for payment of medical bills and expenses incurred by reason of serious illnesses of Dorothy Ebie Wright; and a construction of such testamentary writing was sought in support of the Bank's right to so invade the principal fund for benefit of Mrs. Wright when seriously ill.

The trial court, upon hearing, concluded that from terms of the testament in question, plaintiff trustee had no right to invade the corpus of estate for benefit of Mrs. Wright, "under any circumstance, even in the case of her serious illness"; further decreeing, however, that the trustee could advance payments out of income, borrowing money from the trust estate for such purpose; and that on termination of the trust, could charge all such advancements (not repaid) to that share of the trust estate to which the devisees, legatees, or heirs of Mrs. Wright may be entitled. Judge Thornton further refused to construe the will of Nelson Russell Ebie on ground of pre-maturity of suit; both the trustee and Mrs. Wright excepting to these rulings and giving notice of appeal.

The elder Ebie, a resident of Dallas, Texas, died February 26, 1938, leaving a will of date August 21, 1933. Its contents will be summarized as far as possible, quoting paragraphs therefrom when necessary. It provided (para. 4) that the trustee (appellant Bank) after payment of debts, funeral expenses, and taxes due, should hold the balance of his property and keep it invested in good safe securities "which shall be at least equal in security to those permitted by law for the investment by guardians of trust funds"; the income from said trust estate to be paid in equal shares to his children, Nelson Russell Ebie and Mrs. Dorothy Ebie Wright, for and during the terms of their natural lives and in monthly payments. Remaining provisions of paragraph (4) were as follows: "While I harbour a full measure of love and affection for my son and daughter, it is my continuing wish that they both be at all times selfsustaining by their own efforts independently of my bounty and to this end I direct my said trustee to not advance to either or both of my said children, any monthly payment or payments due under this trust, nor any part of the principal, nor shall my said children anticipate any payment or payments due hereunder; Provided, however, that in case of serious illness the said trustee may, if, in its sole discretion, it deems the cause sufficient, advance payments for said purposes only." Paragraph (5) that in event of death of either of his children, leaving no issue surviving him or her, then the entire income, payable in monthly installments as theretofore provided, should be paid in the same manner to the surviving child during term of its natural life; paragraph (6) that: "In the event my son or my daughter shall die and leave a child or children, the issue of his or her own body, or by adoption, then the income from the trust fund hereinbefore provided and in the monthly amount due and payable to my said son or daughter had he or she lived, shall be paid to the legally appointed guardian of said child or children in an amount sufficient to provide for the proper support and education of said child or children until the child, or if more than one, the eldest, reach-

es the age of majority. When said child, or the eldest of them, shall have reached the age of majority then the entire income of the trust estate herein shall be paid over to my son or my daughter then surviving in monthly payments as hereinbefore outlined." Paragraph (7) that: "Upon the death of both my son and my daughter, and in the event neither of them leave surviving them any issue of their own bodies or legally adopted children, then the balance of my property, consisting of said trust estate, shall be distributed as follows: One-fourth (¼) thereof to Hope Cottage of Dallas, Texas, an institution with which I have been variously identified for many years, and one whose aims and purposes I admire and with which I am in hearty accord. The other three-fourths (¾) shall be distributed as follows:—One-half (½) to the legatees and devisees of my said son, in accordance with his last will and testament, if he shall leave a will, or if not, to his heirs at law according to the laws of succession of the place where he resides at the time of his death, and in effect at the time of his death. The other half to the legatees and devisees of my said daughter, in accordance with her last will and testament, if she shall leave a will, or if not, to her heirs at law according to the laws of suc-

cession of the place where she resides at the time of her death, and in effect at the time of her death." In paragraph (9), the testator refers to the fact that he has theretofore deeded to his daughter (Mrs. Wright) a home in Dallas, denominating the conveyance a gift, and not to be construed as "an advancement of any part of her share in this estate."

These further facts appear, either undisputedly or as findings of the trial court: That upon probate of Mr. Ebie's will on April 5, 1938, the inventory and appraisement of estate reflected a value of $230,213.62, consisting in greater part of cash, insurance, annuities, bonds and stocks; the approximate value of said trust estate in November 1953 being $258,639.39. That plaintiff trustee in accordance with its own construction of the will, and paragraph (4) in particular, has from time to time advanced money to Dorothy Ebie Wright on occasion of her serious illness, which it has charged to the entire corpus of the trust estate. That after the death of Nelson Russell Ebie in 1944, through to 1953, it paid to the daughter, Mrs. Wright, all income from said trust, and in addition, had made advancements for her benefit out of the entire corpus of $9,054.49 as reflected by its Exhibit 2, viz.:

| | "Amts. Paid to Her Out of Income | Amts. Paid for Her Out of Her Income | Amts. Paid for Her Out of Corpus | Totals for Each Cal. Year. |
|---|---|---|---|---|
| 1944 | $ 3,960.00 | –0– | $ 94.00 | $ 4,054.00 |
| 1945 | 7,656.00 | –0– | 1,196.80 | 8,852.80 |
| 1946 | 6,576.00 | –0– | 331.00 | 6,907.00 |
| 1947 | 6,860.00 | $ 156.84 | –0– | 7,016.84 |
| 1948 | 8,900.00 | 611.75 | –0– | 9,511.75 |
| 1949 | 7,200.00 | 1,015.00 | –0– | 8,215.00 |
| 1950 | 7,200.00 | 964.00 | 1,938.05 | 10,102.05 |
| 1951 | 7,200.00 | 1,252.80 | 2,558.50 | 11,011.30 |
| 1952 | 7,200.00 | 4,049.70 | –0– | 11,249.70 |
| 1953 | 7,200.00 | 695.08 | 2,936.14 | 10,831.22 |
| Totals | $69,952.00 | $8,745.17 | $9,054.49 | $87,751.66" |

Relative to the foregoing, in 1949 and since, by agreement between the trustee and Mrs. Wright, the sum of $600 per month ($7,200 per year) has been paid to her for living expenses; disbursing on her account the balance of income each year plus the sums from corpus reflected in above statement, by reason of serious illness.

The trial court found that all expenditures from the corpus of estate during

above years were made on account of her recurrences of serious illness and constituted reasonable charges. (See Footnote 1) Nelson Russell Ebie, as heretofore stated, died in 1944, leaving no children, either natural born or adopted; his will of date March 12, 1938 leaving all property, both real and personal, that he might die seized of to his wife Ida L. Ebie (now Fredericks); naming her as independent executrix without bond. Dorothy Ebie Wright had no children, either natural born or adopted, at time of suit. She was 52 years old at time of trial, is the only living heir at law of A. C. Ebie, deceased, and his youngest child.

In essence only two questions of law are presented on this appeal: (1) Whether terms of the 1933 Ebie will, taken together, sufficiently authorize appellant trustee, in its discretion, to resort to the corpus of estate for benefit of Mrs. Wright in cases of serious illness; and (2) bearing in mind paragraph (7) thereof that upon death of Russell Ebie, ⅜ths of the "balance of my property" should pass "to the legatees and devisees of my said son, if he shall leave a will, or if not, to his heirs at law * * *", of whether the 1938 will of Russell Ebie (hereinafter quoted) sufficiently constituted appellee Ida Fredericks as such devisee or legatee. Point (1) of both appellants is to the effect that under the will of A. C. Ebie the trustee was given power and authority to charge the entire corpus of estate with amounts, in excess of income, used to pay bills incurred through the serious illness of Mrs. Wright; point (2) of the latter party being as follows: "If the will does not expressly authorize expenditures from the principal in the case of serious illness of Mrs. Wright, the dominant and controlling purpose of the testator which appears from the entire will was to allow such expenditures when the Trustee determined they are necessary; therefore, the construction of the trial court was erroneous." Appellee Mrs. Fredericks

takes the opposite view, namely, that said testamentary instrument in no respect empowers the trustee to invade the corpus of estate so established.

Our solution of the question thus posed centers upon paragraph (4), although appellants contend that the wording of other sections has equal significance in a determination of the testator's intent; and in this connection, they agree that the will speaks without ambiguities or conflicts. Any judicial pronouncement relative to such intent as evidenced by a given will is governed by the general rule, well stated in 44 T.J., p. 683, that: "A court may not indulge in conjecture or inference as to the probable intention of a testator, nor may it recognize a testamentary intention that is not evidenced in the writing, even to avoid a hardship in a particular case. On the contrary, the testator must be presumed to have said what he meant to say and to have meant what he said in his will. So the question is not so much what the testator may have actually intended, as what is meant by the language and terms used by him." So, also, with respect to the powers of a testamentary agent, it is the Texas rule that a "trustee has only such powers as are conferred by the instrument creating the trust, and that neither the trustee nor the courts *can add to or take from* such power, but must permit it to stand as written and give to it only such construction as was intended * * *." Hays v. Harter, Tex.Civ.App., 177 S.W.2d 797, 798, writ ref. (Emphasis ours.)

Upon careful study of briefs and relevant provisions of the senior will, we conclude that neither expressly nor by implication was the trustee authorized to resort to the principal of the Ebie estate "in case of serious illness"; the word "payments" in the proviso of paragraph 4 ("that in case of serious illness the said trustee may, if, in its sole discretion, it deems the cause sufficient, advance pay-

---

1. The two physicians testifying in such connection described Mrs. Wright as a "chronic alcoholic"; Dr. Dayton McBride, who treated her from August 1947 to June 1951, stating on direct examination, "I don't think I ever saw her when she didn't present a case of serious illness."

ments for said purposes only") referring to "monthly payments" due the son and daughter from the trust estate income, and being the only sense in which these words are employed throughout the will. Undoubtedly, under paragraph (4), the sole interest of these children in the trust fund during lifetime was limited to the income therefrom in "monthly payments"—a debt-or-creditor relationship; and it is to these payments only that the later paragraph (7) can have reference. In paragraph (4), the testator expresses a continued hope that the children be at all times independent of "my bounty" and to this end directed the trustee to advance no "monthly payment or payments due" them from the trust, *nor any part of the principal*; then providing that in case of serious illness, the trustee in its discretion may "advance payments for said purposes only." This language cannot be given the meaning argued by appellants without insertion of the words "from said principal or corpus", and such an interpolation would manifestly be in excess of his powers. Neither the trustee nor the courts can add to or take from the former's powers as fixed in the will, but must permit it to stand as written. Hays v. Harter, supra.

 That the testator failed to use language expressly providing for an invasion of the corpus is strongly indicative that the trust estate is to be preserved; in Homer v. Landis, 95 Md. 320, 52 A. 494, 496, the court stating: "It seems impossible to suppose that, if the testator had it in his mind to dedicate any portion of the corpus of the trust estate to the accomplishment of the trust, he could have failed to use some language which would have expressed that intention." The same principle is followed in Re Kohler, 96 Misc. 433, 160 N.Y.S. 669, 675, as follows: "* * * the trustees are not permitted to pay out any portion of the principal unless the will specifically so authorizes." See also Hopkins v. Remy, 64 N.J.Eq. 12, 53 A. 676; Kling v. Van Cleeve, 106 N.J. Eq. 302, 150 A. 684. A like indication that the corpus of trust is not to be disturbed is stated in Lynn Safe Deposit & Trust Co.

v. Martin, 308 Mass. 443, 32 N.E.2d 247, 250, viz.: "* · * * The continued reference in the will to the gifts to the life beneficiaries as payable out of the income requires, we think, the conclusion that the dominant purposes of the will are that the beneficiaries should be paid out of the income and not out of the principal of the estate, and that the entire principal of the estate should ultimately be used for the benefit of the designated charities." The case just cited, also First National Bank of Toms River v. Levy, 123 N.J.Eq. 21, 195 A. 820, make applicable the settled rule that the gift over of a trust estate is cogent proof that it is not to be drawn upon. In short, from the will as a whole it appears, at least to us, that this trust estate was not set up predominately, as appellants argue, for support of the testator's children in sickness or in health. Equally clear is his intent to preserve the property *intact* for distribution at termination of the trust to the legatees or devisees of these children, if he or she "shall leave a will." And obviously in the same connection, the discretion vested in said trustee under the quoted proviso was referable alone to whether the contingency therein mentioned, as same might arise, amounted to a case of serious illness.

 It is further argued with great vigor that the advancements in case of serious illness could not be chargeable to income, because the trustee was required absolutely to pay over the same each month; and the will setting up no way to finance necessary advancements on account of illness, the trustee in its discretion could resort to the corpus of estate. A trustee, within reasonable limits, has, ipso facto, the right to hold or accumulate income for future contingencies, just as the Bank here has done by agreement with Mrs. Wright since 1949; and this, although the instrument creating the trust contained language providing for distribution of the whole income. 125 A.L.R. Annotations, p. 634. Thus in Sinnott's Estate, 310 Pa. 463, 165 A. 244, and In re Sternberger's Estate, 121 Pa.Super. 50, 182 A. 723, the retention by the trustees of a portion of the income

from the trust estate in aid of the judicious management of the estate and to provide for future contingencies was held to be a reasonable exercise of the trustees' power, although the testator had expressly provided that the whole of the income should be distributed to those entitled to it. The principle just stated is recognized and applied in Penix v. First National Bank of Paris, Tex.Civ.App., 260 S.W.2d 63.

The contention is also made that the word "balance" (paragraph 7) is used in the sense of subtraction; in other words, as relating to *property remaining undisposed of*, implying a power on part of the trustee to invade the corpus, the remainderman to get only that property which is left upon death of the life tenant. Suffice it to say, the facts and circumstances of the cases cited by appellants are such as to render them easily distinguishable; for instance, in Woodlief v. Clay, Tex.Civ. App., 71 S.W.2d 600; First National Bank of Beaumont v. Howard, 149 Tex. 130, 229 S.W.2d 781; McFarland v. Phillips, Tex. Civ.App., 253 S.W.2d 953; Brohn v. Berner, 95 N.J.L. 85, 77 A. 517; and Houser v. Houser, 268 Pa. 401, 112 A. 29, the first beneficiary was either clearly authorized to use the corpus or his right was in the nature of a determinable fee. Here, Mrs. Wright had undisputedly no more than a life estate in the property with right to direct a disposition in part of the remainder by will. And conclusively refuting the contention made is the testator's own definition of the word "balance" as *"consisting of said trust estate,"* when providing in paragraph (7) for ultimate distribution of his property. (Emphasis ours.)

We now turn to an examination of the Russell Ebie will which, as all parties agree, should receive a present construction. It was the duty of the trial court to construe this instrument, but, as all matters relating thereto are undisputed, that duty passes to us. Vernon's Ann.Civ. St. Art. 2524–1, Declaratory Judgments Act; 4 T.D., Appeal and Error, sec. 1175 (7). It is dated March 12, 1938 and reads in material part: "That I, Nelson Russell Ebie, of the County of Dallas, State of Texas, being in good health and of sound and disposing mind and memory, and being desirous to settle my worldly affairs while I have strength to do so, do make this my last Will and Testament, hereby revoking all others heretofore by me made. First. I desire and direct that my just debts be paid out of my estate as promptly as can be conveniently done without sacrificing any of my property to do so. Second. I devise and bequeath unto my beloved wife, Ida L. Ebie, all the property, both real and personal, that I may die seized and possessed of, after the payment of my just debts and all the expenses incident to the probating of this will; and it is my will that it shall pass to and vest in her in fee simple to manage, control, mortgage, sell, and dispose of as she may wish or see proper. Third. I hereby constitute and appoint my wife, Ida L. Ebie, independent executrix of this will, and direct that no bond or security be required of her as executrix, and that no action shall be had in the Probate Court in relation to the settlement of my estate other than the probating and recording of this will, and the return of an inventory and appraisement of my estate and list of claims in favor of my estate." On October 1, 1940 Mrs. Ida Ebie, now Fredericks, was granted a divorce from Russell Ebie by judgment inclusive of a property settlement setting aside to her a house and lot (presumably their home place), furniture, automobile, and assignment of a $1,400 interest in his income from the A. C. Ebie trust, duly paid by the Bank trustee; defendant receiving as separate property a diamond ring and stickpin. Russell Ebie died in 1944 with above 1938 will unchanged; Mrs. Fredericks in 1947 causing a probate of same, qualifying as independent executrix and filing inventory and appraisement of his estate, reciting that Russell Ebie had left no property at death "other than an expectant interest based on the contingencies contained in the will of A. C. Ebie, deceased, * * *." (See Footnote 2.)

2. This inventory and appraisement was presented as evidence in district court in July, 1954 (after the trial and perfection of appeal) on motion denied by

It is the position of appellee Mrs. Fredericks that under the A. C. Ebie will, his son Russell was given an equitable life estate with general power of appointment, the testator providing the method by which such power of appointment could be exercised; and that such method was duly satisfied by Russell Ebie in his own last will and testament. (See Footnote 3.)

Appellant Wright's point 3 and subsections present the contrary view; in effect (1) that the will of Russell Ebie was limited by express language to a disposition of his own property and could not have been intended to cover a power of appointment, since "Under the will of A. C. Ebie no property right of any character passed to either child after the death of the survivor of them, which is Mrs. Wright." (2) "The general disposition of Nelson Russell Ebie's property and estate was not an exercise of the power conferred upon him by the will of A. C. Ebie." (3) "The will of Nelson Russell Ebie was not an exercise of the power contained in the will of A. C. Ebie, because there is no direction for distribution of the division of the balance of the trust estate for which Nelson Russell Ebie was authorized to name the distributees." In this connection it is to be noted that the will now in question makes no reference to his father's will or, for that matter, to the trust estate. Likewise that in many states, exclusive of Texas, statutes have been enacted whereby a general or residuary devise is made a sufficient exercise of the power of appointment under a will. 46 Michigan Law Review, p. 274. The rationale of common-law decisions must therefore govern the question of whether by the general devise of Russell Ebie there has been an exercise of his testamentary power of appointment. Our discussion here may be shortened by statement of some relevant principles of law.

"Subject to certain restrictions, the common law accords to the individual a right to delegate to another person the power of designating or selecting the takers of his property. The authority thus to control the disposition of the estate of a grantor or testator is referred to as a 'power of appointment'; the grantor or testator is described as the 'donor' of the power, and the person who exercises it as the 'donee,' and the taker of the property

the trial court but pursuant to Rule 270, Texas Rules of Civil Procedure, providing in part: "At any time the court may permit additional evidence to be offered where it clearly appears to be necessary to the due administration of justice. * * *." Such inventory appears in this record by supplemental transcript and motion which, though contested, has been sustained. See Rule 1, T.C.P.; also Power v. Cravens, Tex.Civ.App., 241 S.W.2d 301; McAdams v. Dallas Ry. & Terminal Co., 149 Tex. 217, 229 S.W.2d 1012. The proffered evidence related to an undisputed matter, not controversial in nature.

3. Appellees' primary counter-point argues that the A. C. Ebie will failed to create a power of appointment; it being the intention of the testator that the legatees and devisees of Russell Ebie, whoever they may be, should receive a contingent remainder as a class, which became vested upon probate of Russell's will designating "devisees and legatees" thereunder. In other words, that she took under the will of A. C. Ebie by being named to the class of devisees designated therein.

However, the words "devisees and legatees" possess no common attribute (same relationship to the testator) such as is necessary to constitute a "class" in legal contemplation. Belkin v. Ray, 142 Tex. 71, 176 S.W.2d 162; 75 A.L.R. Annotations, pp. 773, 781.

Though only incidental to primary issues, the over-all effect of paragraph 6, and paragraph 7 in part, should be noted briefly. It relates to "child or children," if any, of Mrs. Wright, Russell Ebie having died without issue. Mrs. Wright, as remaining beneficiary, now receives the entire income from this trust estate. At her death, should she be survived by child, natural or adopted, same would appear entitled to such amount out of the total income as would provide for its "proper support and education" up to the age of majority, when the trust would terminate and the subject property be finally available for distribution as provided in paragraph 7. In event no "child or children" survive Mrs. Wright, of course, the provisions of paragraph 6 become immaterial.

as the 'appointee.' Very commonly the donee is given a life estate in the property, and the power has relation to the disposition of the estate in remainder, authority being conferred upon the donee to appoint the future estate by will to any persons whom he may select or to appointees who correspond with a term of general description. * * * A power of appointment must be exercised in the manner specified in the instrument by which it has been conferred." 33 T.J., pp. 757, 758, 759, secs. 2 and 3. These common-law rules, when applied to the situation at hand, would appear to end the controversy. For, in the father's will, the son was simply authorized to dispose of three-eighths of the trust estate by *will naming legatees or devisees*; and upon the due execution of a will by Russell Ebie naming a devisee, would not all requirements of the senior will be satisfied? But appellant Wright points to the fact that the property passing by such power of appointment constituted no part of the estate of the donee Russell Ebie, whose will dealt only with "my estate"; insisting that at common law a general devise is not a sufficient exercise of a power of appointment; and finally that the elder Ebie "did not intend for his son to exercise such power by a general devise or legacy, but only by virtue of a specific devise or devises, legacy or legacies." This argument makes applicable these further well established principles: (1) "A will conferring a power of appointment by will, and the will of the donee exercising such power, must be construed together. The intent to appoint and its execution are to be sought through the entire will of the donee." 41 Am.Jur., sec. 39, p. 833.

■ (2) " * * * The general rule is that to constitute an execution of a power granted, the instrument in question (in the instant case a will) must disclose an express intention to execute such power of appointment, either by its own recitals or by necessary implication, such as a description of the identical property covered, or where such instrument cannot operate except as carrying out the exact power

granted. Hill v. Conrad, 91 Tex. 341, 43 S.W. 789; 49 C.J. 1288. * * *" Seguin State Bank & Trust Co. v. Locke, Tex.Civ. App., 73 S.W.2d 645, 647, affirmed, 129 Tex. 524, 102 S.W.2d 1050. (3) "The rule adopted by the courts seems to be that there are three classes of cases in which it may be said that the power has been executed: (1) Where there is a reference to the power in the instrument; (2) where there is a reference to the property on which it is subject to be executed; and (3) where the provisions of the will or deed executed by the donee would otherwise be ineffectual—that is, would have no operation except as an execution of the power. 2 Underhill on Wills, § 801; Lane v. Lane, 4 Pennewill, Del., 368, 55 A. 184, 64 L.R.A. 849, 103 Am.St.Rep. 122, and notes there collected. But if upon the whole will it appeared that the testator intended to execute the power of appointment, a general residuary clause will be held sufficient, although there may be no reference in the will to the power. It is well settled that if there be an interest and a power existing together in the same person over the same subject, and an act be done without particular reference to the power, it will be applied to the interest, and not to the power. Weir v. Smith, 62 Tex. 1. * * *" Arnold v. Southern Pine Lumber Co., 58 Tex.Civ.App. 186, 123 S.W. 1162, 1167.

■ There is a group of cases, other than instanced in Arnold v. Southern Pine Lumber Co., supra, which deal with the exercise of a power of appointment, though the will refers neither to the power nor property involved; consisting of situations where the intent of the donee to so act was made manifest by the language of the instrument read in light of the circumstances of its execution. Thus the leading authority of Blagge v. Miles, C.C.1841, Fed.Cas.No. 1479, 1 Story 426, goes on to hold: "The principle, * * * however occasionally misapplied, is never departed from, that if the donee of the power intends to execute and the mode be, in other respects, unexceptional, that intention, however manifested, whether directly or indirectly, positively

or by just implication will make the execution valid and operative."

As already mentioned, A. C. Ebie died Feb. 26, 1938, his will filed for probate March 6, and the will in question of Russell Ebie executed March 12 thereafter. There is no evidence of what property he owned on said date, but two years later in the divorce settlement same was shown to consist of a homestead one-half interest and jewelry; he being compelled to resort to his income from the A. C. Ebie "Trust Fund" in such connection. Assuming his property to have been the same on date of his will, it may also be assumed that he had actual knowledge of his father's will; in view of which, the son's testament was signed, not to dispose of property comparatively slight, but in compliance with the father's will awaiting probate. In Cragin v. Frost National Bank, Tex.Civ.App., 164 S.W.2d 24, 30, a like sequence of events was held to be strongly indicative of an intent to exercise the donee's power of appointment; the San Antonio Court holding that "Another circumstance which has a bearing on Mrs. Wilson's intention is the fact that she went, soon after her husband's death, and executed a will showing an intention to meet the requirements of his will to the effect that she must leave a will executed after the date of his death." Cragin's Appeal, supra, also bears upon the argument that the testator was merely disposing of "my estate" in the wording "all the property, both real and personal, that I may die seized and possessed of." Further language was that everything should "pass to and vest in her in fee simple to manage, control, mortgage, sell, and dispose of as she may wish or see proper." Such would undoubtedly include any interest beneficially owned.

■ Finally, it is not to be disputed that Russell Ebie left no property at death other than that over which he had aforesaid power of distribution by will; and even if the conclusion just above reached be in any respect erroneous, the principle followed in Arnold v. Southern Pine Lumber Co., supra, is of undoubted application here, that an exercise of the power must be implied "* * where the provisions of the will or deed executed by the donee would otherwise be ineffectual—that is, would have no operation except as an execution of the power." Why this testator did not change his will following the 1940 divorce proceedings we do not know. We do know that the sole beneficiary thereunder remained so until his death; also, that Russell Ebie must have known that his unrevoked will would have probable effect on his right of disposition of the parent estate.

■ All points of error advanced by appellants will be overruled without further discussion. In response to the brief of Hope Cottage Association, a charitable corporation under the laws of the State of Texas, we hold its interest to be a vested remainder in one-fourth of the corpus subject only to the death of Mrs. Wright without natural or legally adopted children. Caples v. Ward, 107 Tex. 341, 179 S.W. 856. The rights of possible children are sufficiently defined in Footnote 3 hereto.

■ The trial court's final decree authorizing the trustee to charge advances made to Mrs. Wright in cases of serious illness, not repaid out of income at termination of the trust, to that portion of the estate to which her heirs or devisees are entitled, is declared to be of no force and effect; affirming only that part of the judgment finding "That the Trustee has no right under the will of A. C. Ebie, deceased, to invade the corpus of the trust estate for the benefit of Dorothy Ebie Wright under any circumstance, even in the case of her serious illness." Said judgment is otherwise reformed so as to include above construction of the will of Russell Ebie, and as reformed will be affirmed.

Reversed in part as per instructions; otherwise, reformed and affirmed.